# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

Warren Laifer and
Gail Anne Laifer

   v.                                 Case No. 17-cv-425-PB

Nancy A. Berryhill, Acting
Commissioner, Social Security
Administration; New Hampshire
Department of Health and Human
Services; and Shania Sanborn

## REPORT AND RECOMMENDATION

Appearing pro se and in forma pauperis, Warren and Gail Laifer have filed a complaint (doc. nos. 1 and 3), which is before this magistrate judge for preliminary review. See LR 4.3(d)(2). For the reasons that follow, I am issuing an order granting plaintiffs leave to amend their complaint to assert a properly exhausted and timely claim based upon the reduction of their Social Security benefits, however I also recommend dismissal of all of their other claims.

## I. The Legal Standard

When reviewing a pro se complaint, I must construe it liberally. See Erickson v. Pardus, 551 U.S. 89, 94 (2007). After reviewing a complaint filed by parties such as the

Laifers, who are not incarcerated and who are proceeding in forma pauperis, I may

> recommend to the court that the filing be dismissed because the allegation of poverty is untrue, the court lacks subject matter jurisdiction, or the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief[; or]
>
> . . . grant the party leave to file an amended filing in accordance with the magistrate judge's directives.

LR 4.3(d)(2)(A) & (B); see also 28 U.S.C. § 1915(e)(2). To state a claim upon which relief may be granted, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Gordo-González v. United States, 873 F.3d 32, 35 (1st Cir. 2017).

## II. **Background**

The facts in this section are drawn from the Laifers' complaint, which consists of documents 1 and 3. See Endorsed Order, Nov. 7, 2017.

As a preliminary matter, the court notes that the Laifers' complaint is convoluted and difficult to follow. That said, they allege that they both are or have been eligible for, and

2

have received, Social Security benefits, food stamps, and some form of housing assistance. At some point, their Social Security and food stamp benefits were reduced. The reasons for those reductions are hinted at, but not fully described, in the complaint. According to plaintiffs:

> We were defrauded by the Social Security Administration ["SSA"] and all papers and answers they gave were [lies] with criminal intent to defraud. The same applies to D.H.H.S. food stamp program. All venues of handling this have been attempted – we need to talk to a federal judge in chambers.

Compl. (doc. no. 3 at 2). As to the venues in which they have pursued their claims, plaintiffs elaborate: "We appeared at both Social Security and food stamps office[s], [and] contacted Senator Shaheen's office staffers." Compl. (doc. no. 1 at 2).

With regard to conduct by Shania Sanborn on which plaintiffs base their claim(s) against her, they allege:

> Shania Sanborn said prior to our deficit [presumably the reduction in their . . . benefits], call the city, call the state, call the federals, and steal take all of our benefits, what a sick sociopath, pathological liar who should be questioned about the sickening children episode. She organized all the action. The amounts to be stole[n] and the exact [number] of food stamps, social security were known, stated by Shania's crews prior to Gail and I knowing. Also she knew and told them about Renee Laifer's home address and U.F.T. benefits, some type of gambling operation was going on. If we died, insurance policies, last will [and] testaments, estates, please get them into a courtroom so they can explain it with us both present.

3

Compl. (doc. no. 1 at 4-5). Other than alleging that Sanborn's address is the same as the address of a rooming house in which they once resided, plaintiffs do not indicate how they and Sanborn are connected or what role Sanborn may have played in causing any injury they claim to have suffered.

In the heading of their complaint, plaintiffs list the following causes of action:

> grand larceny, fraud, mail fraud, racketeering, organized interstate stalking, cyber def[amation]/ slander, identity theft, invasion of medical privacy, child abuse, child labor, elder abuse.

Compl. (doc. no. 1 at 1). In the body of their complaint, they accuse defendants of "theft of benefits, racketeering, organized grand larceny, theft, organized vocal harassment, I.D. theft, stalking interstate." Id. at 3. While plaintiffs list numerous legal theories, their complaint includes few supporting factual allegations. As for relief, plaintiffs seek to recover Social Security and food stamp benefits they believe were wrongly withheld from them, and they also ask for placement in housing for the elderly.

### III. Discussion

**A.** **Defendant Sanborn**

Defendant Sanborn should be dropped from this case. While

plaintiffs' discussion of Sanborn is long on invective, their complaint, even when read most liberally, see Erickson, 551 U.S. at 94, does not state a plausible claim for relief against Sanborn. Thus, plaintiffs claim(s) against her should be dismissed. See 28 U.S.C. § 1915(e)(2)(B)(ii).

**B.  Criminal Conduct**

Many of the legal claims in plaintiffs' complaint appear to be assertions that defendants engaged in criminal conduct. But generally speaking, there is no federal right to have criminal wrongdoers prosecuted. See Nieves-Ramos v. Gonzalez-de-Rodríguez, 737 F. Supp. 727, 728 (D.P.R. 1990) (citing Linda R. S. v. Richard D., 410 U.S. 614, 619 (1973) ("a private citizen lacks a judicially cognizable interest in the prosecution or non prosecution of another")). For that reason, to the extent that plaintiffs assert claims based upon defendants' allegedly criminal conduct, those claims should be dismissed. See 28 U.S.C. § 1915(e)(2)(B)(ii).

**C.  RICO Violations**

Plaintiffs also appear to assert that defendants are liable to them for racketeering, in violation of the Racketeer Influenced and Corrupt Organization ("RICO") Act. "To state a civil RICO claim . . . a plaintiff must allege '(1) conduct, (2)

of an enterprise, (3) through . . . a pattern . . . of racketeering activity.'" Home Ortho. Corp. v. Rodríguez, 781 F.3d 521, 528 (1st Cir. 2015) (quoting Kenda Corp. v. Pot O'Gold Money Leagues, Inc., 329 F.3d 216, 233 (1st Cir. 2003)). The RICO statute, in turn, "specifically enumerates what kinds of illegal acts count as 'racketeering,'" Home Ortho., 781 F.3d at 528, and that enumeration includes, among other things, mail fraud and fraud in connection with identification documents, see 18 U.S.C. § 1961(a). "[T]he civil damages provision of the RICO statute . . . allows '[a]ny person injured in his business of property by reason of a [RICO violation]' to recover damages." Painters & Allied Trades Dist. Council 82 Health Care Fund v. Forest Labs., Inc. (In re Calexa & Lexapro Mktg. & Sales Practices Litig.), 315 F.R.D. 116, 123-24 (D. Mass 2016 (citations omitted).

While plaintiffs' complaint uses the words "racketeering," "mail fraud," and "identity theft," it falls short of alleging facts that, if proven, would establish that any defendant engaged in two or more predicate acts of racketeering, conducted by an enterprise, that proximately caused injury to plaintiffs' business or property interests. Because plaintiffs' complaint fails to state a claim under RICO, to the extent that plaintiffs

6

are asserting RICO claims, any such claims should be dismissed. See 28 U.S.C. § 1915(e)(2)(B)(ii).

**D.    <u>Reduction of Food Stamp Benefits</u>**

Plaintiffs' next claim is that the New Hampshire Department of Health and Human Services ("DHHS") erroneously reduced the amount of their food stamp benefits.  When a food stamp recipient wishes to challenge a decision concerning eligibility for benefits, the proper way to do so is by asking for a fair hearing from DHHS.  See 7 C.F.R. § 273.15(a).  "The only judicial review of a fair hearings decision issued by [DHHS] is by petition for a writ of certiorari [to the New Hampshire Supreme Court]."  <u>In re Kalar</u>, 162 N.H. 314, 318 (2011) (quoting <u>In re Walker</u>, 138 N.H. 471, 473 (1994)).  Accordingly, the court lacks subject matter jurisdiction over plaintiffs' claim concerning the reduction of their food stamp benefits.  See <u>Trefry v. Tracy</u>, No. 1:14-cv-00044-NT, 2014 WL 2154263, at *5 (D. Me. May 22, 2014); <u>see also</u> <u>Kilroy v. Mayhew</u>, 841 F. Supp. 2d 414, 419-24 (D. Me. 2012) (ruling that subject matter jurisdiction over food stamp eligibility decision was precluded by <u>Burford</u> abstention doctrine) (citing <u>Burford v. Sun Oil Co.</u>, 319 U.S. 315 (1943)).  Because the court lacks subject matter jurisdiction over plaintiffs' food stamp claim, it should be

7

dismissed. See LR 4.3(d)(2)(A); Gordo-González, 873 F.3d at 37 (affirming district court's dismissal of claim over which it lacked subject matter jurisdiction).

**E.   Reduction of Social Security Benefits**

All that remains is plaintiffs' claim that their Social Security benefits were erroneously reduced. However, it is well established that before a person may challenge a reduction in Social Security benefits in the district court, he or she must exhaust the administrative remedies available through the SSA. See Wilson v. Sec'y of HHS, 671 F.2d 673, 677 (1st Cir. 1982) (citing Mathews v. Eldridge, 424 U.S. 319, 328 (1976)). Exhaustion, in turn, consists of pursuing an administrative remedy through the SSA and receiving a "final decision of the Commissioner of Social Security made after a hearing." 42 U.S.C. § 405(g). Moreover, after receiving such a decision, a plaintiff must commence his or her civil action "within sixty days after the mailing to him [or her] of notice of such decision or within such further time as the Commissioner of Social Security may allow." Id.

Here, while plaintiffs broadly allege that "all venues of handling this have been attempted," Compl. (doc. no. 3 at 2), they have neither demonstrated nor alleged that they have

8

pursued their claim all the way to a final decision from the Acting Commissioner. However, because plaintiffs' complaint leaves open the possibility that they had exhausted their administrative remedies and filed this action within sixty days after receiving notice of a decision by the Acting Commissioner, dismissal of their claim against the Acting Commissioner is not warranted at this time. Therefore, in an Order issued simultaneously with this Report and Recommendation, plaintiffs are granted leave to amend their complaint to demonstrate that they have received a final decision from the Acting Commissioner and that this civil action was timely filed.

## IV. <u>Conclusion</u>

For the reasons described above, all of plaintiffs' claims, other than their Social Security claim, should be dismissed for failure to state a claim upon which relief can be granted or for lack of subject matter jurisdiction.

Any objection to this Report and Recommendation must be filed within 14 days of receipt of this notice. <u>See</u> Fed. R. Civ. P. 72(b)(2). The 14-day period may be extended upon motion. Failure to file a specific written objection to the Report and Recommendation within the specified time waives the

9

right to appeal the district court's order.  See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016); Fed. R. Civ. P. 72(b)(2).

_____
Andrea K. Johnstone
United States Magistrate Judge

November 9, 2017

cc:  Warren Laifer, pro se
     Gail Laifer, pro se